MARK A. CAMERON (Bar No. 100449)
  (e-mail: mac@msrlegal.com)
DAVID E. HARRIS. (Bar No. 161334)
  (e-mail: deh@msrlegal.com)
MILLER STARR REGALIA
A Professional Law Corporation
1331 N. California Blvd., Fifth Floor
Post Office Box 8177
Walnut Creek, California  94596
Telephone:    925 935 9400
Facsimile:    925 933 4126

Attorneys for Plaintiff
WACHOVIA BANK, NATIONAL ASSOCIATION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WACHOVIA BANK, NATIONAL ASSOCIATION, | Case No.:  2:07-CV-02612-JAM-KJM |
| Plaintiff, | ORDER GRANTING APPOINTMENT OF RECEIVER BASED UPON STIPULATION |
| v. | |
| WINCHESTER PROPERTIES, LLC, a Delaware Limited Liability Company; WINCHESTER COUNTRY CLUB, LLC, a California Limited Liability Company; CLINTON C. MYERS; CLINTON C. MYERS, as the Trustee of the CLINTON CHARLES MYERS REVOCABLE TRUST Dated 03/07/89; MYERS HOMES OF CALIFORNIA, LLC, a Nevada Limited Liability Company; MYERS HOMES, INC., a California corporation; SECURITY SAVINGS BANK; a Nevada State Bank; and DOES 1 through 200, inclusive, | Case Filed:  December 5, 2007 |
| Defendants. | |

A Stipulation for Appointment of a Receiver ("Stipulation") was electronically filed on May 6, 2008 before the Honorable John A. Mendez of the above-entitled Court by Miller Starr Regalia on behalf of plaintiff WACHOVIA BANK, NATIONAL ASSOCIATION ("Wachovia").

PDF created with pdfFactory trial version www.pdffactory.com

Having considered the representations in the Stipulation, and the contents of the documents referred to therein and herein below, the Court finds that the following matters are undisputed:

(a)   Moving party Wachovia as agent and beneficiary under a Loan Agreement and related Promissory Notes, is the holder of the beneficial interests in two deeds of trust, one of which is that deed of trust recorded in the Official Records of Placer County on October 21, 2005, as Instrument No. 2005-0141560 ("Golf Course Deed of Trust").  A Notice of Default was recorded concerning the Golf Course Deed of Trust on or about November 9, 2007.  This Order concerns all of that real Property and personal property described in said Golf Course Deed of Trust at Exhibits A and B, which exhibits are attached to this Order Granting Appointment of Receiver Based on Stipulation ("Order") to define the property subject to the receivership below ("Property");

(b)   The Golf Course Deed of Trust at, inter alia, sections 4.2(a) and 4.5, as recorded and as attached to the Complaint in this lawsuit, expressly provides for the appointment of a receiver after monetary defaults, and monetary defaults are likely to exist by Winchester Country Club LLC ("Owner") and Winchester Properties, LLC, ("Borrowers");

(c)   There is an imminent risk that there will not be adequate resources to preserve some or all of the Property, thus providing cause for the immediate appointment of a receiver over all of the Property during the pendency of foreclosure proceedings.  The parties named in the lawsuit above are referred to as the "Parties".

(d)   Federal Rules of Civil Procedure, Rule 66, Local Rule 66-232(a), California Civil Code § 2938(c)(1) and California Code of Civil Procedure §564(b)(1) (2) and (11) each provide support for a receiver under the circumstances presented.  The Complaint at paragraphs 59-67 pleads for a judicially appointed receiver over the Property.

(e)   Pursuant to California Code of Civil Procedure §564, subd. (d) the Stipulation and issuance of this Order do not constitute an action within the meaning of Code of Civil Procedure §726, subd. (a).

PDF created with pdfFactory trial version www.pdffactory.com

Wherefore, based upon the above findings, the accompanying Stipulation, and good cause appearing:

**IT IS HEREBY ORDERED** that Wachovia's application for appointment of a receiver is granted, on the following terms**:**

1. Douglas P. Wilson is hereby appointed Receiver in this action.  Based upon the Stipulation, it does not appear that any noticed hearing on the confirmation or continuation of the receivership shall be required.  Should any person object to the Receiver or terms after appointment or object to the amount of the Bond required to be posted by the Receiver, such persons are to show cause to this Court at a noticed hearing.

2. Within three (3) calendar days of entering upon its duties as Receiver, Receiver shall take the oath required by law and file herein an approved surety company bond in the penal sum of $150,000, conditioned upon the faithful performance of its duties as such Receiver.  The Receiver's Bond and the Oath of the Receiver may be filed by electronic transmission.

3. As of 7:00 a.m. on the day following the day on which this Order is filed (the "Effective Date"), Receiver shall be legally entitled to enter upon, gain access to, and take possession of the Property and to care for, preserve, operate and maintain the Property and incur necessary expenses as required to comply with this Order.

4. The Receiver is authorized, empowered and directed as of the Effective Date to:

4.1.   Hire, employ, retain, and terminate consultants (including but not limited to the Douglas Wilson Companies, the Receiver's management company), brokers and any other personnel or employees, which the Receiver deems necessary to assist him in the discharge of his duties.  All reasonable expenses incurred in connection with the hiring and retention of such personnel shall be expenses of, and paid for by, the receivership estate or Property.

4.2.   Collect all rents, profits, royalties, income, damages from any cause of action the Receiver is empowered to pursue, and other benefits derived from the Property ("Income") which is now or hereafter may be derived from the Property and existing operations

PDF created with pdfFactory trial version www.pdffactory.com

relating to the Property.  To the extent that, on or after the Effective Date, Owner or its agents, assignees, successors, or representatives collect any Income derived from the Property, such Income shall be delivered to the Receiver within five (5) business days of such collection.  To the extent that as of the Effective Date, Owner, or its agents, assignees, successors, or representatives hold in their possession or control any Income derived from the Property, they shall promptly turn same over to Receiver, including control of any bank accounts or reserves so derived.  Any Income, security, or other deposits collected by Owner or obligors to Owner, and which are not paid to the Receiver, and over which the Receiver has no control, shall be obligations of Owner and may not become obligations of the Receiver without further order of the Court.

        4.3.     Demand, receive and keep safely in its possession all Income received from the use or occupation of Property and the use of the personal property of Owner located on the Property, and all monies, bank accounts, records, books of account, rent schedules, ledgers and other documents of Owner pertaining to the operation of the Property held by persons in possession of, or concerned with the management of the Property.  All persons now or hereafter having possession of any of the same are ordered and directed, subject to any applicable attorney-client or work product privileges, to deliver possession thereof to the Receiver.

        4.4.     Apply Income available from the Property to protect the Property from imminent physical waste and, as far as practicable, to operate the Property.  In addition, the Receiver shall promptly investigate and then make recommendations as to whether and to what extent operations at the Property should or should not continue, based on Income available from the Property and the expenses necessary to preserve the assets of the Property.  In the event that the Income from the Property is not sufficient to pay the costs of the Receiver and to preserve and operate the Property, the Receiver may request, and moving party Wachovia may, if requested by the Receiver and in Wachovia's sole discretion, advance requested funds to the Receiver as permitted under applicable provisions of the Golf Course Deed of Trust and related promissory note and loan agreement. Advances, if any, shall be considered advances pursuant to the Golf Course Deed of Trust and all appurtenant loan documents and shall be added to the obligations of the Borrowers hereunder.  Should Wachovia choose not to make such advances and should no

PDF created with pdfFactory trial version www.pdffactory.com

other party be willing to do so, then Receiver may issue first priority lien against the Property

Receivership Certificates in increments of $10,000 up to $100,000, or apply to the Court for

issuance of first priority lien Receivership Certificates in any greater sum.  Nothing in this Order

shall imply that moving party Wachovia has any obligation to provide any loan advances, or to

fund Receivership Certificates, or to otherwise provide capital or funds in any manner to

implement any recommendations of the Receiver as to the continued operations of the Property

("Optional Operations") except as the Receiver finds necessary to protect the Property from

imminent physical waste, or as the law provides to assure payment of the Receiver's fees.

Optional Operations will be evaluated by the Receiver and may include, but are not limited to,

operation of the clubhouse, food services, pro shop, or golf course usage, and any capital

improvements.  Wachovia shall be entitled to make its own determination as to whether its

investment of additional funds is appropriate for Optional Operation purposes other than physical

preservation of the Property, and should such funding be deemed necessary by Receiver and no

other funding source be available, Receiver shall alert the Court and may then apply to dismiss

the Receivership and be discharged.  Should Receiver recommend funding for any Optional

Operations, and should Receiver identify anyone willing to fund purchase of Receivership

Certificates for such other purposes, Receiver may return to Court and request issuance of such

certificates.  To the extent Income is available from current Property operations to continue

Optional Operations of the Property, the Receiver shall be empowered to so operate the Property,

including, as necessary employing agents, servants, employees, clerks and accountants, and to

purchase merchandise, materials, supplies and services and to pay leases in the ordinary course of

operation, and to pay for them at the ordinary and usual rate out of the funds which shall come

into his possession as Receiver.

        4.5.     To the extent practical based upon available Income and necessary

expenses of the Property, bring and prosecute all proper actions for the collection of sums due, as

well as all necessary actions and proceedings for the removal of lessees, persons, or other entities

in default, from the Property, and to bring and prosecute all proper actions for the protection of

the Property, or to recover possession thereof.  The Receiver is authorized to employ counsel to

PDF created with pdfFactory trial version www.pdffactory.com

provide such legal assistance as may be necessary to achieve these purposes.  The Receiver is authorized to compensate said attorney at an hourly rate not to exceed $415.00 and to pay on a monthly basis such fees upon compliance with the notice and opportunity for objection procedure set forth in paragraph 13 below, with all such compensation subject to ultimate approval by this Court upon a regularly noticed application

4.6.    Exclude from the Property any person in any way interfering with the operation of the Property by the Receiver;

4.7.    Institute, prosecute, defend, compromise, intervene in, or become a party to such suits, actions, or proceedings as may in his opinion be reasonably necessary for the protection, maintenance, operation, preservation or enhancement of the receivership estate, (including unlawful detainer actions, defense of mechanic's liens actions, abatement of nuisances, and other ordinary and usual proceedings incident to the management of a golf course and commercial property), to employ counsel as may be necessary for such proceedings, and to thereafter report to the Court at reasonable intervals upon such proceedings.  Prior to initiating or defending any unusual or non-routine suits, actions, or proceedings, the Receiver shall consult with counsel for the Parties to the litigation, and if consensus is not reached, shall obtain an order from the Court concerning the initiation or defense of such suits, actions, or proceedings;

4.8.    Demand, receive and keep safely in its possession, all monies hereafter received from the Property and the personal property of Owner located on the Property, or their operation and held by persons in possession of, or concerned with the management of the Property; and also records, books of account, rent schedules, ledgers and other documents pertaining to the operation of the Property, and all persons now or hereafter having possession of any of the same are ordered and directed to deliver possession thereof to the Receiver;

4.9.    In addition to the reports required under paragraph 16 below, provide to all Parties an accounting of the books and records of all operations of the Property not less than once every three months.

5.      Except as provided herein, no utility may alter, refuse, or discontinue service to the Receiver solely on the basis of his appointment to operate the Property, or because a debt

PDF created with pdfFactory trial version www.pdffactory.com

owed by the Owner of the Property to such utility for service rendered before the date of this Order was not paid when due.  Such utility may alter, refuse, or discontinue service if the Receiver, within 30 days of the date of this Order, has not furnished adequate assurance of payment for service after such date.  On request of the Receiver, or other party in interest, the Court may make further orders to provide said utility with adequate assurance of payment.

6.     All income tax reporting and payments whether for periods prior to, or during the term of the Receivership, shall remain the obligation of the Owner or other entities previously using or operating the Property.  Receiver shall bear no liability for the failure of the Owner of the Property to report said income to taxing authorities or pay the taxes associated with such income.  The Receiver shall supply, within 10 days of any request by the Owner, copies of all documents in his possession which are deemed necessary by the Owner or other entities for the preparation of their taxes.  The Receiver shall bear no liability for the failure of such persons to report said income to taxing authorities or pay the taxes associated with such income.

7.     Monies coming into the possession of the Receiver, not expended by it for any purpose herein authorized, shall be deposited in a branch of any convenient financial institution selected by him, which is insured by the FDIC, to be held subject to such orders as the Court may hereafter make.

8.     Owner shall notify the Receiver at the time the Receiver takes possession of the Property as to the insurance coverage thereon.  If sufficient insurance coverage does exist, Owner shall be responsible and is hereby ordered to use best efforts to cause the Receiver to be named as an additional named insured on each and every such policy for the entire period the Receiver shall be in possession of the Property.  If sufficient insurance coverage does not exist, it is hereby ordered that the Receiver shall have thirty (30) working days from his appointment to procure adequate insurance on the Property, provided that he has funds available to do so pursuant to paragraph 4 of this Order; during such period, the Receiver shall not be personally responsible for claims arising with respect to the Property, or for the procurement of insurance unless such claims are the direct result of any action or inaction on the Receiver's behalf.  The Receiver shall consult with Plaintiff Wachovia relative to the type and adequacy of insurance

PDF created with pdfFactory trial version www.pdffactory.com

needed.  If the Receiver discovers that sufficient insurance coverage does not exist, the Receiver shall immediately notify the Court and the parties to this litigation in writing of the lack of adequate insurance coverage for the Property.

9. The Receiver, or any party to the action, may from time to time, and on due notice to all parties, whether by ex parte application pursuant to the requirements of local court rules, or by noticed motion, make application to the Court for further orders instructing the Receiver.

10. As of the Effective Date, Defendants WINCHESTER PROPERTIES, LLC; WINCHESTER COUNTRY CLUB, LLC; CLINTON C. MYERS; CLINTON C. MYERS, as the Trustee of the CLINTON CHARLES MYERS REVOCABLE TRUST Dated 03/07/89; MYERS HOMES OF CALIFORNIA, LLC; and MYERS HOMES, INC., and their agents, assignees, lessees, employees, and independent contractors, and any persons or entities operating the Property on behalf of or with permission of Owner are, pending further order of the Court, forthwith enjoined and restrained from interfering in any manner with the Receiver in the operation and management of the Property; or from collecting, receiving or disposing of Owner's monies, rents, issues, profits, or personalty or improvements related to or which comprise the Property, or the yield thereof.

11. The Sheriff of the County of Placer, State of California, is authorized to assist the Receiver in every capacity in which said Sheriff's assistance may be required in order to enable the Receiver to take and safely keep possession and control of the Property.

12. The primary purpose of the Receiver shall be to preserve the physical Property from physical deterioration and maintain essential utilities and services to protect the Property.  The Receiver is also authorized to utilize receipts from the Property to pay secured real property taxes and all liens and encumbrances secured by the Property entrusted to the Receiver in the order of their priority.  The Receiver shall promptly give written notice to all parties to this action of any such payments.

13. The Receiver shall be entitled to interim compensation for its services at its usual and normal hourly rates, which for the Receiver shall not exceed $415.00 per hour, subject

PDF created with pdfFactory trial version www.pdffactory.com

to final Court approval as hereafter set forth.  The Receiver may have his employees, or employees of the Douglas Wilson Companies, perform services for the receivership estate or Property at their normal hourly rate pursuant to the fee schedule attached hereto as Exhibit C.  In addition, the Receiver shall be reimbursed for all reasonable expenses incurred by the Receiver on behalf of the receivership estate or Property.  The Receiver shall file with the Court and serve upon counsel of record (except Receiver's counsel) written notice of the amount to be paid to each payee and the services rendered or expenses incurred.  If any party so noticed does not object to the payment of such fees or expenses within ten (10) days from service by delivering written objections to the Receiver specifying the items or services objected to and the specific reasons why such items or services should not be paid, the Receiver may pay all fees and expenses to which no objection was made.  If objections have been timely made, the Receiver may at its election, immediately file a motion upon notice to counsel of record for authority to pay such fees or expenses objected to, or wait until such later date as the Receiver may choose to file a motion for authority to pay such fees and reimburse such expenses from the assets and Income of the receivership estate.  Despite the periodic payment of Receiver's fees and administrative expenses, the statements of said fees and expenses shall be submitted to the Court, for its approval and confirmation, in the form of either a stipulation among the parties, or Receiver's final account and report.  The interim fees paid shall be subject to final approval by the Court and the Court retains jurisdiction to award a greater or lesser amount as the full, fair and final value of such services.

14.    The Receiver is authorized and empowered to (a) execute and prepare all documents and to perform all acts, either in the name of the parties, or in the Receiver's own name, which are necessary or incidental to preserving, protecting, managing and/or controlling the receivership estate, and (b) do all things and incur risks and obligations ordinarily done or incurred by Owner; provided, however, that no such risk or obligation shall be the personal risk or obligation of the Receiver or of Douglas Wilson Companies, but solely the risk or obligation of the receivership estate or the Property.

15.    Within thirty (30) days after qualification hereunder, the Receiver shall file an inventory of all of the Property of which he has taken possession pursuant to this Order.  In

PDF created with pdfFactory trial version www.pdffactory.com

addition, the Receiver shall comply with all applicable federal rules pertinent to receiverships and to the extent applicable, all rules set forth in California Rules of Court §§3.1175 through 3.1184, including, without limitation, the furnishing of monthly reports to the parties.

16.   As soon as is practicable after the receivership terminates, the Receiver shall file, serve, and set for hearing in this Department his Final Report and Account.  Notice must be given to all persons, of whom the Receiver is aware who have potential claims against the receivership estate.  Any motion to approve the final report and accounting, and for discharge of the Receiver, shall contain a summary of the receivership accounting including an enumeration, by major categories, of total revenues and total expenditures, the net amount of any surplus or deficit with supporting facts, a declaration under penalty of perjury of the basis for the termination of the receivership, and evidence to support an order for the distribution of any surplus, or payment of any deficit, in the receivership estate.

17.   No individual or entity may sue the Receiver without first obtaining the permission of this Court.

18.   The Receiver's authority is over the Owner's Property and does not extend to real or personal property of other persons other than Owner.

**IT IS FURTHER ORDERED** that:

1.   In addition to all of the powers and responsibilities set forth above, the Receiver shall, every three months, render to the Court reports of the proceedings and accountings with respect to all of the acts and things done by it and all monies received and expended by him or his agents.

2.   On and after the Effective Date, Owner, and Owner's agents, servants, directors, officers, affiliates, employees, attorneys, assignees, lessees, representatives, and all other persons and entities acting in concert with Owner, or any of them, shall be and hereby are enjoined and restrained from engaging in or performing directly, or indirectly, any of the following acts:

(a)   Expending, disbursing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in, encumbering, concealing or in any

PDF created with pdfFactory trial version www.pdffactory.com

manner whatsoever destroying or disposing of the whole or any part of the assets of the receivership estate derived from the Property;

   (b) Doing any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of the proceeds of the receivership estate in whatever form the interest is held or used from and after the date of this Order;

   (c) Destroying, concealing, transferring or failing to preserve any document which evidences or pertains to the disposition of the receivership estate, or any part thereof.

   3. If Owner files a bankruptcy case during the receivership, Wachovia shall give notice of the bankruptcy case to the Court, to all parties, and to the Receiver by the close of the next business day after the day on which Wachovia receives notice of the bankruptcy filing. If the Receiver receives notice that the bankruptcy has been filed and the bankruptcy estate includes property that is the subject of this order, the Receiver shall have the following duties:

   (a) Turn over property if no relief from stay is sought.  The Receiver shall immediately contact the party who obtained the appointment of the Receiver and determine whether that party intends to move in the bankruptcy court for an order for (1) relief from automatic stay, and (2) relief from the Receiver's obligation to turn over the Subject Property (11 U.S.C., §543).  If the party has no intention to make such a motion, the Receiver shall immediately turn over the property to the appropriate entity – either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession – and otherwise comply with 11 United States Code section 543.

   (b) Remain in possession pending resolution.  If the party who obtained the receivership intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the Property, the Receiver may seek an order from the Bankruptcy Court to remain in possession and preserve the Property pending the ruling on those

PDF created with pdfFactory trial version www.pdffactory.com

motions (11 U.S.C., §543(a)).  Under the foregoing circumstances, the Receiver's authority to preserve the Property shall be limited as follows:

      1.   The Receiver may continue to collect Income;

      2.   The Receiver may make only those disbursements necessary to preserve and protect the Property;

      3.   The Receiver shall not execute any new leases or other long-term contracts; and

      4.   The Receiver shall do nothing that would effect a material change in the circumstances of the Property.

(c)     Retain bankruptcy counsel.  The Receiver may petition the court to retain legal counsel to assist the receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

      GOOD CAUSE APPEARING, APPOINTMENT OF THE RECEIVER IN ACCORDANCE WITH THE PROVISIONS ABOVE IS SO ORDERED.

Dated:  May 7, 2008

                /s/ John A. Mendez
                JUDGE OF THE DISTRICT COURT

PDF created with pdfFactory trial version www.pdffactory.com